UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SUSAN K. YOUNG,<br><br>   Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br>AS TRUSTEE FOR OPTION ONE<br>MORTGAGE LOAN TRUST, et al.,<br><br>   Defendants. | Civil Action No. 11-10757-LTS |

ORDER ON PENDING MOTIONS

March 7, 2012

SOROKIN, M.J.

Pending before the Court is Plaintiff's Motion to Amend the Complaint (Docket #8). Defendants have filed no opposition to the Motion. Therefore, the Court ALLOWS Plaintiff's Motion to Amend. Thus, the Defendants' Motion to Dismiss Plaintiff's Complaint (Docket #2) is DENIED AS MOOT. Additionally, the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket #13) is DENIED AS MOOT as it is duplicative of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket #17), which remains pending. For the reasons that follow, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket #17) is hereby ALLOWED.

I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the Amended Complaint. On September 9, 1997, Plaintiff purchased property at 29 Pine Street, Yarmouth Port, MA ("the property"). (Docket #9 at

¶¶ 1, 4). Plaintiff thereafter constructed a home at the property. Id. at ¶ 5.

On September 1, 2006, Plaintiff obtained a mortgage on the property in the amount of $282,000 from Option One Mortgage, Corp. Id. at ¶ 6. The mortgage provided for an initial interest rate of 7.8% subject to change on September 1, 2008, and every six months thereafter.[1] (Docket #18, Ex. 1 at 9). On December 29, 2010, the mortgage was assigned to Defendant Wells Fargo as trustee. (Docket #9 at ¶ 7). At all relevant times, Defendant American Home Mortgage Servicing, Inc. has been the loan servicer for Plaintiff's mortgage.

Prior to August 2008, Plaintiff fell behind on her mortgage payments. Id. at ¶ 10. In August 2008, Plaintiff sent a $2,600 payment to Defendants in order to bring her payments up to date. Id. at ¶ 11. Shortly thereafter, a notice was posted on her door stating that she was late on her mortgage payment. Id. at ¶ 12. The notice indicated that it was to be ignored if the Plaintiff had in fact made such payment. Id. On August 27, 2008, Plaintiff called Defendants and was told that, while her payment was received, Defendants would not process the check and that her home would be put into foreclosure. Id. at ¶ 13.

Between August 27, 2008, and September 5, 2008, Plaintiff negotiated an agreement with Defendants whereby, if she sent a $5,628.42 check by Federal Express to Defendants, Defendants would agree to a forbearance agreement that would be sent to her by fax for her execution. Id. at ¶ 14. Although Plaintiff complied and sent the $5,628.42 check to Defendants, Defendants did not

---

[1] Defendants attached a copy of the mortgage to their Motion to Dismiss. The Court finds that it may properly consider this document without converting Defendants' Motion into one for summary judgment. Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000) ("[I]t is well-established that in reviewing the complaint, we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.") (internal citation omitted).

fax Plaintiff a forbearance agreement.  Id. at ¶¶ 15-16.

On September 8, 2008, Plaintiff contacted Defendants and was told there was no agreement. Id. at ¶ 17.  After insisting that there was such an agreement, Plaintiff was referred to a supervisor, Maryann Connor, who stated that the August 2008 check for $2,600 had not been processed, that if the August 2008 check had been processed no foreclosure would have been initiated, and that Defendants would agree to stop foreclosure and process both the August and September 2008 checks if, and only if, Plaintiff agreed to sign a forbearance agreement.  Id. at ¶ 18.  Plaintiff was then faxed a forbearance agreement.  Id. at ¶ 19.  The forbearance agreement listed the total arrearage as $10,738.41 and required that Plaintiff pay $3,144.32 monthly, an increase of about $816.18 per month.  (Docket #9, Ex. 1 at 3).

By April 2009, Plaintiff stopped making payments on the mortgage.  (Docket #9 at ¶ 22). This course of events caused Plaintiff to lose sleep, impeded her decision making process and her ability to earn income, was the source of arguments and dissent between her relatives and friends, and was a primary factor in causing stress between her and her husband, resulting in their separation on July 13, 2010.  Id. at ¶¶ 23-24.

Plaintiff applied for and qualified for a modification of the mortgage pursuant to the federal Home Affordable Modification Program ("HAMP").[2]  Id. at ¶¶ 26-27.  On October 19, 2009, Plaintiff executed the Home Affordable Modification Trial Period Plan.  Id. at ¶ 28.

---

[2] HAMP, created by Congress under the Emergency Economic Stabilization Act of 2008, is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury.  Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 306 (D. Mass. 2010).  Servicer Participation Agreements between Fannie Mae and mortgage loan servicers require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP guidelines.  Id.

Pursuant to the Trial Modification Agreement, if Plaintiff complied with its terms, then Plaintiff would be provided a Home Affordable Modification Agreement that would amend and supplement the loan documents. (Docket #9, Ex. 1 at 11). In order to comply with the terms of the Trial Modification Agreement, Plaintiff was required to make three monthly payments of $1,368.84, entitled the "Trial Period Payment," to commence on November 1, 2009. Id. at 12. This section states: "The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different." Id. Section 3 states:

> I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D above, the Lender will determine the new payment amount.

Id. at 13.

Plaintiff made the three monthly $1,368.94 payments required under the Trial Modification Agreement beginning on November 1, 2009. (Docket #9 at ¶ 29).

On January 13, 2010, Defendants sent Plaintiff a written notice denying her permanent status under the Trial Modification Agreement, claiming they had not received all trial period plan payments on or before the 30th day from the due date of the last trial period plan payment. Id. at ¶ 32. Plaintiff was shocked and upset on receiving this notice. Id. at ¶ 33. Plaintiff obtained the assistance of legal counsel. Id. at ¶ 34. Plaintiff's counsel contacted Defendants who stated that Plaintiff should ignore the January 13, 2010, letter because it had been sent in error. Id. Defendants notified Plaintiff that she would be sent a permanent modification agreement shortly. Id. at ¶ 35.

On February 14, 2010, Defendants sent Plaintiff an Adjustable Rate Mortgage Change

Notification, which increased her interest rate to 7.8%. Id. at 37. Plaintiff was shocked and upset by this letter. Id. at ¶ 38.

On June 14, 2010, Defendants sent a Permanent Loan Modification Agreement to Plaintiff. Id. at ¶ 44. The monthly payment in the Permanent Loan Modification Agreement required a monthly payment of $1,658.71, $289.77 more per month than those under the Trial Modification Agreement. Id. at ¶ 45. Plaintiff did not execute the Permanent Loan Modification Agreement.

Defendants filed a notice of their intent to foreclose Plaintiff's mortgage with the Land Court.[3] Id. at ¶ 48.

On January 29, 2011, Plaintiff forwarded Defendants a demand letter under Massachusetts General Laws, Chapter 93A, Section 9. Id. at ¶ 49.

II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, _ U.S _, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential,

---

[3] The Amended Complaint does not reveal the date on which Defendants filed their notice to foreclose.

respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id.  The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1949) (alterations omitted).

III.  DISCUSSION

   A.  Breach of the Trial Modification Agreement - Count I

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." Guckenberger v. Bos. Univ., 957 F. Supp. 306, 316 (D. Mass. 1997).  Plaintiff asserts that Defendants breached the Trial Modification Agreement by attempting to unilaterally modify it by charging a higher monthly mortgage payment.

The Trial Modification Agreement set a three-month schedule of $1,368.84 monthly payments.  The Trial Modification Agreement clearly states that this payment, entitled the "Trial Period Payment," is only "an estimate of the payment that will be required under the modified loan,"

as determined by Defendants after reviewing the relevant financial information, Docket #9 at ¶12, and that the actual payments under the modified loan terms may be different.  See also Docket #9, Ex. 1 at 13 ("[O]nce Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance . . ., the Lender will determine the new payment amount.").  No term in the Trial Modification Agreement extended the $1,368.84 monthly mortgage payment beyond the three month trial period.  Thus, Plaintiff has not stated a claim for breach of the contract and Count I of the Amended Complaint is hereby dismissed.

    B.  Home Affordable Modification Program - Count II

Count II alleges negligence by Defendants through their failure to abide by the Trial Modification Agreement.  Plaintiff alleges that Defendants were negligent when they mistakenly, and admittedly, sent a letter to Plaintiff on January 13, 2011, stating the Trial Modification Agreement was terminated.  Plaintiff alleges that Defendants were also negligent when, in June 2010, they reassured Plaintiff that the Trial Modification Agreement would be continued under its previous terms.  Plaintiff also alleges that Defendants were negligent when, without prior notice or cause, Defendants attempted to unilaterally modify the Trial Modification Agreement by charging a higher monthly mortgage payment.  Defendants move to dismiss this Count on the basis that HAMP does not imply the right to a private cause of action and that, even if HAMP did imply such a right, Plaintiff has failed to properly allege the elements of a negligence claim.

That there is no private right of action under HAMP "is the consensus of courts that have considered the matter."  Brown v. Bank of Am. Corp., No. 10-11085, 2011 U.S. Dist. LEXIS 36235, at *10 (D. Mass. Mar. 31, 2011) (O'Toole, J.); see, e.g., Hart v. Countrywide Home Loans, Inc., 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); Hoffman v. Bank of Am., N.A., No. C 10-2171 SI, 2010

U.S. Dist. LEXIS 70455, at *6 (N.D. Cal. June 30, 2010). However, Plaintiff, citing to Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304 (D. Mass. 2010) (Gorton, J.), argues that a defendant's violation of a HAMP regulation may stand as evidence of a breach of duty of care owed under state law.

To prevail on a claim for negligence, "a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 849 N.E.2d 834-35 (Mass. 2006). Defendants assert that Plaintiff's claim of negligence fails because Defendants owe Plaintiff no duty of care.

Generally a duty of care arises from the relationship of parties to one another. Dhimos v. Cormier, 509 N.E.2d 1199, 1201 (Mass. 1987); Mullins v. Pine Manor Coll., 449 N.E.2d 331, 336 n.9 (Mass. 1983) (citing Upham v. Chateau de Ville Dinner Theatre, Inc., 403 N.E.2D 384 (Mass. 1980) (theater to patron); Carey v. New Yorker of Worcester, Inc., 245 N.E.2d 420 (Mass. 1969) (restaurant to patron); Kane v. Fields Corner Grille, Inc., 171 N.E.2d 287 (Mass. 1961) (saloon keeper to patron); Quigley v. Wilson Line of Mass., Inc., 154 N.E.2d 77 (Mass. 1958) (common carrier to passenger); McFadden v. Bancroft Hotel Corp., 46 N.E.2d 573 (Mass. 1943) (hotel or innkeeper to patron)). "[T]he existence of a positive regulation imposing a duty on one actor does not by itself create a similar duty as a matter of state tort common law." Brown, 2011 U.S. Dist. LEXIS 36235, at *12; see Sorenson v. H & R Block, Inc. No. 99-10268-DPW, 2002 U.S. Dist. LEXIS 18689, at *29 (D. Mass. Aug. 27, 2002) (looking at Massachusetts law and finding "it to be the long settled rule that violation of a statute – whether federal or state, and whether permitting a private right of action or not – 'does not by itself establish a breach of duty, for it does not constitute

negligence per se'") (quoting Bennett v. Eagle Brook Country Store, Inc., 557 N.E.2d 1166, 1168 (Mass. 1990)). "So while violation of a regulation such as HAMP may provide evidence of a breach of duty otherwise owed, it does not create such a duty in the first place." Brown, 2002 U.S. Dist LEXIS 18689, at *12. Here there is no duty otherwise owed. See Corcoran v. Saxon Mortg. Servs., Inc., No. 09-11468-NMG, 2010 U.S. Dist. LEXIS 51040, at *10-11 (D. Mass. May 24, 2010) (finding that under Massachusetts law "a lender owes no general duty of care to a borrower"); Huerta v. Ocwen Loan Servicing, Inc., No. C 09-05822 (HRL), 2010 U.S. Dist. LEXIS 17970, at *11 (N.D. Cal. Mar. 1, 2010) (finding that it follows logically from the fact that a lender owes no duty of care to a borrower "that a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer"). Because Defendants owe no duty of care to Plaintiff independent of HAMP, Plaintiff has failed to state a claim for negligence and Count II of the Amended Complaint is hereby dismissed.[4]

    C.  Covenant of Good Faith and Fair Dealing - Count III

Count III alleges a claim of breach of the covenant of good faith and fair dealing against Defendants. Plaintiff asserts that Defendants breached their duty to her by failing to abide by the Trial Modification Agreement. Plaintiff also asserts that, pursuant to HAMP, the parties had an obligation to work out a loan modification in good faith.

---

[4] Speleos differs materially from this case. In Speleos, the plaintiffs alleged that the defendants proceeded with a foreclosure sale while the plaintiffs' HAMP application was pending in direct violation of HAMP and "plausibly" in violation of the defendants' duties of good faith and fair dealing to a mortgagor while exercising a power of sale in mortgage under Massachusetts law. See Seppala & Aho Constr. Co. v. Petersen, 367 N.E.2d 613, 616 (Mass. 1977) ("the basic rule of law applicable to the foreclosure of real estate mortgages is that 'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor'") (quoting West Roxbury Co-op. Bank v. Bowser, 87 N.E.2d 113, 115 (Mass. 1949)). No such allegations are made here.

Every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991). "Parties to a contract are obligated to deal honestly and in good faith in both the performance and enforcement of the terms of their contract[.]" Hawthorne's, Inc. v. Warrenton Realty, Inc., 606 N.E.2d 908, 914 (Mass. 1993). However, the covenant may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004).

As discussed above, Plaintiff has not stated a claim for breach of the Trial Modification Agreement. Acting in accordance with the terms of that agreement does not constitute a breach of the obligation of good faith and fair dealing. McKensi v. Bank of Am., N.A., No.09-11940-JGD, 2010 U.S. Dist. LEXIS 99540, at *13-14 (D. Mass. Sept. 22, 2010). There is no private right of action under HAMP and there is no alleged right in the mortgage to modify the loan. See Speleos, 755 F. Supp. 2d at 312. Nor can the mortgage be said to incorporate the HAMP Guidelines as the mortgage was drafted prior to their promulgation. Id. Finally, Plaintiff has not pled that the delay in procuring the proposed modification, the terms of the proposed modification, or the process of determining the payment amount breached the duties of good fair and fair dealing. Thus, Plaintiff fails to state a claim that Defendants breached the covenant of good faith and fair dealing and Count III of the Amended Complaint is hereby dismissed.

### D.  Infliction of Emotional Distress - Count IV

In Count IV, Plaintiff asserts claims for both negligent and intentional infliction of emotional

distress. Plaintiff bases these claims on the letters sent by Defendants on January 13, 2010, and February 14, 2010, as well as the events leading up to the 2008 forbearance agreement.

To recover for negligent infliction of emotional distress, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 437 N.E.2D 171, 181 (Mass. 1982). As discussed above, Defendants owed Plaintiff no duty of care and, therefore, Plaintiff's claim of negligent infliction of emotional distress is hereby dismissed. See Brown, 2002 U.S. Dist LEXIS 18689, at *13 (stating that plaintiff's cause of action for negligent infliction of emotional distress is not recognized as a tort independent from negligence).

To make out a claim for intentional infliction of emotion distress, a plaintiff must prove:

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)). "The standard for making a claim of intentional infliction of emotional distress is very high in order to 'avoid litigation in situations where only bad manners and mere hurt feelings are involved.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (quoting Agis, 355 N.E.2d at 319). "Whether a plaintiff has alleged facts sufficient to meet this standard is a question of law for the court." McCarty v. Verizon New England, Inc., 731 F. Supp. 2d 123, 130 (D. Mass. 2010). Defendants assert that Plaintiff fails to state a claim for intentional infliction of

emotional distress because the alleged conduct was not extreme or outrageous. They are correct.

Plaintiff relies on three incidents. First, the January 13, 2010, notice denied Plaintiff permanent status under the Trial Modification Agreement, claiming that Defendants did not receive all the Trial Period Plan payments at the time due. When Plaintiff's counsel contacted Defendants about this notice, counsel was immediately told that the notice was sent in error and should be ignored. Although Defendants sent the incorrect notice they acted quickly to rectify their mistake when it was brought to their attention and never acted upon it. Second, pursuant to the adjustable rate rider, the interest rate on the mortgage was subject to change every six months beginning on September 1, 2008. Thus, the interest rate on the mortgage was subject to change on March 1, 2010. Plaintiff received the letter notifying her of the changing interest rate on February 14, 2010. The original mortgage permitted such a change. Third, with respect to the events culminating in the 2008 forbearance agreement, Plaintiff admits that she was behind in her mortgage payments as of August 2008. Defendants offered Plaintiff a forbearance agreement in which she would make her regular loan payments and, for the period of one year, a monthly payment of a pro rata portion of the amount in arrears in order to make her account current.

Neither separately nor collectively do these incidents support an inference of an <u>intentional</u> effort to inflict emotional distress. In addition, the conduct is not extreme and outrageous, beyond all possible bounds of decency, or utterly intolerable in a civilized community. Thus, Plaintiff has failed to state a claim for intentional infliction of emotional distress and Count IV of the Amended Complaint is hereby dismissed.

    E. <u>Chapter 93A - Count V</u>

Plaintiff asserts that Defendants' actions constitute an effort to collect an alleged debt from

Plaintiff, including, but not limited to, Defendants' false claim that Plaintiff did not make payments under the Trial Modification Agreement and the Defendants' effort to boost payment under the Permanent Loan Modification Agreement.

Pursuant to Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. L. ch. 93A, § 2. Individuals have a private right of action under the statute. Mass. Gen. L. ch. 93A, § 9(1). "To prevail on a Chapter 93A claim, the plaintiff 'must prove that a person who is engaged in trade of business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result.'" Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (quoting Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005)). An act is "deceptive" for purposes of Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486-87 (Mass. 2004) (quoting Purity Supreme Inc. v. Attorney Gen., 407 N.E.2d 297, 307 (Mass. 1980)). In determining whether a particular practice or act violates the unfairness prong of Chapter 93A, the court looks to:

> (1) whether the practice is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (quotation and alterations omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008) (quotation and alteration omitted).

"[A] violation of HAMP that is unfair or deceptive could create a viable claim for relief under Chapter 93A." Id. Several judges in this district have conducted a three-part inquiry to decide whether a 93A claim will lie for violation of the HAMP Guidelines:

> (1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under chapter 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the "objectives and enforcement mechanisms" of HAMP?

Id. (quoting Ordning v. BAC Home Loans Servicing, LP, No. 10-10670-MBB, 2011 U.S. Dist. LEXIS 83269, at *21 (D. Mass. Jan. 10, 2011)); see Speleos v. BAC Home Loans Servicing, L.P., No. 10-11503-NMG, 2011 U.S. Dist. LEXIS 119262, at *19 (D. Mass. Oct. 14, 2011); Okoye v. Bank of New York Mellon, No. 10-11563-DPW, 2011 U.S. Dist. LEXIS 82769, at *27-28 (D. Mass. July 28, 2011).

With respect to the first prong, Plaintiff has failed to adequately allege that Defendants violated a specific HAMP regulation. Instead, Plaintiff alleges violations of the Trial Modification Agreement resulting in a higher monthly payment under the Permanent Loan Modification Agreement. As stated above, Defendants did not breach the Trial Modification Agreement by including a higher monthly mortgage payment in the Permanent Loan Modification Agreement because the Trial Modification Agreement specifically contemplated that the payments under the Permanent Loan Modification Agreement could be higher than the Trial Period Payments. Additionally, although Defendants sent Plaintiff a notice on January 13, 2010, stating that they had not received all Trial Period Payments, Plaintiff was told to ignore this letter and that it had been in error as soon as she contacted Defendants. Finally, although Plaintiff alleged that Defendants erred in processing her payments in August and September 2008, these issues were resolved when

Plaintiff spoke to a supervisor. Plaintiff has failed to allege facts demonstrating that the failure to process her payments caused her actual harm. Thus, Plaintiff has failed to state a claim for a violation of Chapter 93A and, therefore, Count V of the Amended Complaint is hereby dismissed. See Baena v. KPMG LLP, 453 F.3d 1, 3 (1st Cir. 2006) ("To apply [Chapter 93A] . . . requires a level of fault going beyond mere negligence."); Brown, 2011 U.S. Dist. LEXIS 36235, at * 9 (stating that Chapter 93A violation cannot be found where plaintiff failed to allege facts suggesting that bank's error rose above level of mere negligence or caused plaintiff actual harm).

    F.  Further Equitable Relief - Count VI

In Count IV of the Amended Complaint, Plaintiff requests costs, reasonable attorneys fees, and interest. Having failed to state a claim in any other Count, Count VI of the Amended Complaint is hereby dismissed.

IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend Complaint (Docket #8) is ALLOWED; the Defendants' Motion to Dismiss Plaintiff's Complaint (Docket #2) is DENIED AS MOOT; the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket #13) is DENIED AS MOOT; and Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket#17) is ALLOWED. The Amended Complaint is hereby DISMISSED.

                                        /s / Leo T. Sorokin
                                  UNITED STATES MAGISTRATE JUDGE